794 A.2d 835 (2002)
350 N.J. Super. 175
A.K., Petitioner-Appellant,
v.
DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, and Ocean County Board of Social Services, Respondents-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted March 12, 2002.
Decided April 12, 2002.
*836 Donald B. Mark, Stratford, attorney for appellant.
David Samson, Roseland, Attorney General, attorney for respondents (Patrick DeAlmeida, Assistant Attorney General, of counsel; Elisabeth Doyle, Deputy Attorney General, on the brief).
Before Judges PRESSLER, CIANCIA and COLEMAN.
The opinion of the court was delivered by CIANCIA, J.A.D.
This appeal from the denial of Medicaid benefits centers on the method used to determine a couple's resource eligibility when one spouse is continuously institutionalized and the other is living in the community. The Division of Medical Assistance and Health Services within the Department of Human Services (DMAHS) issued a final agency decision concluding that A.K., the institutionalized spouse, was not eligible for Medicaid at the time she and her husband W.K. applied for benefits because the couple's resources exceeded the maximum amount allowed by law. We now affirm that decision.
A.K. and W.K. are now both deceased. We assume, but have no specific information, that this litigation is being pursued on behalf of appellant A.K.'s estate. The Division does not raise mootness as an issue or otherwise contend that the deaths of A.K. and W.K. preclude a remedy if appellant's legal arguments are otherwise correct.
The underlying facts are not in dispute. In September 1995, A.K. began continuous institutionalization in a nursing home. On October 1, 1995, the first day of the first full month of continuous institutionalization, DMAHS calculated the couple's total countable resources, although no application for benefits was then made. The calculated resources amounted to *837 $219,725.40. At that time, the "community spouse resource allowance" (CSRA), which is the maximum community spouse's share of resources exempt from total countable resources, was $80,760. As discussed below, that figure is established by a formula set forth in a federal statute tied to the Consumer Price Index. The maximum amount of a CSRA can change annually. For instance, effective January 1, 1999, the figure rose to $81,960. It appears that the CSRA did not change from October 1, 1995 until January 1, 1999. An institutionalized spouse is also allowed to retain resources not in excess of $2,000. N.J.A.C. 10:71-4.8(a)(2). Thus, as of January 1998, this couple was permitted to retain total resources not in excess of $82,760 in order to qualify for Medicaid benefits.
As we understand it, appellant contends that the couple's asset evaluation was fixed and frozen on October 1, 1995. Thus, upon application for benefits in January 1998, they claimed to have been eligible for Medicaid on the theory that during the intervening period they had expended at least $136,965.40, the difference between countable resources on October 1, 1995 of $219,725.40 and $82,760 (the CSRA plus the $2,000 allowed to the institutionalized spouse).
The Division's position is that in order to establish Medicaid eligibility the calculation of assets must be made as of the date of application. Thus, any earlier calculation and subsequent "spend down" in accordance therewith, is not controlling. Here, eligibility could only be established if at the time of application the couple's countable assets did not exceed $82,760.
In the present case, the couple had spent down a considerable portion of their countable assets between 1995 and their 1998 application for Medicaid. However, at the same time there had been asset appreciation, most notably their Mobil stock which had split and increased in value. The heart of the present debate is whether assets acquired, or appreciated, after the date of the original asset calculation may be counted as resources affecting Medicaid eligibility when application is finally made.
It is apparently admitted that as of the couple's first application for Medicaid in January 1998, insufficient resources had been expended even under appellant's theory of eligibility. It was subsequently agreed between the parties that June 1, 1998 would be the date of application for Medicaid. At that point, the couple apparently had expended at least $136,965.40 in resources. They were reluctant to reveal their assets as of that date, but the director of the Division found that they retained countable assets in excess of $82,760. Our own review of the record reveals sufficient credible evidence to support that finding, although an exact figure cannot be achieved. We do not believe appellant explicitly contests the Division's calculation. Appellant's position, rather, is that the couple's assets should be fixed as of the calculation of countable assets made on the first day of the first month of continuous institutionalization.
The relevant statutory and regulatory provisions are hardly a model of clarity. However, in our view, the statutory and regulatory schemes support the position of the DMAHS, which was reached in part by application of the agency's expertise. We also find support in our conclusion from the decision of the Minnesota Supreme Court in Estate of Atkinson v. Minnesota Department of Human Services, 564 N.W.2d 209 (Minn.1997), that is directly on point and reaches the same result as that espoused by the Division in the present case.
Medicaid is a federal program that provides funds to states so that eligible needy *838 persons may be reimbursed for the cost of medical care. 42 U.S.C.A. § 1396a to -1396v. The states have significant discretion to design programs, but those programs must be consistent with federal law. Wis. Dep't of Health and Family Servs. v. Blumer, 543 U.S. 473, ___, 122 S.Ct. 962, 966, 151 L.Ed.2d 935, ___ (2002). In New Jersey, the implementing statutory provisions are set forth in the Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -42. The relevant regulations, for purposes of this appeal, are found in N.J.A.C. 10:71-4.1, et seq.
Prior to 1988, the determination of Medicaid eligibility for married applicants, one of whom needed nursing home care, "resisted simple solutions." Blumer, supra, 534 U.S. at ___, 122 S.Ct. at 967, 151 L.Ed.2d at ___. However, in 1988 Congress enacted the Medicare Catastrophic Coverage Act (MCCA), 42 U.S.C.A. § 1396r-5, "to protect community spouses from `pauperization' while preventing financially secure couples from obtaining Medicaid assistance." Blumer, supra, 534 U.S. at ___, 122 S.Ct. at 966-967, 151 L.Ed.2d at ___. The goal of the MCCA was to ensure sufficient income and resources for the community spouse, while committing a fair share of their resources to the institutionalized spouse's care. Cleary v. Waldman, 167 F.3d 801, 805 (3d Cir.), cert. denied, 528 U.S. 870, 120 S.Ct. 170, 145 L.Ed.2d 144 (1999). To that end, the MCCA established a level of income and resources for the community spouse that is protected from inclusion when determining the institutionalized spouse's eligibility for Medicaid and which need not be spent down for the spouse's care. Ibid.
The procedure for calculating income and resource eligibility is set out in 42 U.S.C.A. § 1396r-5(c), which provides:
(1) Computation of spousal share at time of institutionalization
(A) Total joint resources
There shall be computed (as of the beginning of the first continuous period of institu-tionalization (beginning on or after September 30, 1989) of the institutionalized spouse)
(i) the total value of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest, and
(ii) a spousal share which is equal to ½ of such total value.
(B) Assessment
At the request of an institutionalized spouse or community spouse, at the beginning of the first continuous period of institutionalization (beginning on or after September 30, 1989) of the institutionalized spouse and upon the receipt of relevant documentation of resources, the State shall promptly assess and document the total value described in subparagraph (A)(i) and shall provide a copy of such assessment and documentation to each spouse and shall retain a copy of the assessment for use under this section. If the request is not part of an application for medical assistance under this subchapter, the State may, at its option as a condition of providing the assessment, require payment of a fee not exceeding the reasonable expenses of providing and documenting the assessment. At the time of providing the copy of the assessment, the State shall include a notice indicating that the spouse will have a right to a fair hearing under subsection (e)(2) of this section.
(2) Attribution of resources at time of initial eligibility determination

In determining the resources of an institutionalized spouse at the time of application for benefits under this subchapter, regardless of any State laws relating to community property or the division of marital property *839 (A) except as provided in subparagraph (B), all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse, and
(B) resources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds the amount computed under subsection (f)(2)(A)[community spouse resource allowance defined] of this section (as of the time of application for benefits).
[Emphasis added.]
The New Jersey regulations essentially track the federal statute, although the wording is not identical:
(a) In the determination of resource eligibility for an individual requiring long term care, the county board of social services shall establish the combined countable resources of a couple as of the first period of continuous institutionalization beginning on or after September 30, 1989. This determination shall be made upon a request for a resource assessment in accordance with N.J.A.C. 10:71-4.9 or at the time of application for Medicaid benefits. The total countable resources of the couple shall include all resources, to the extent either the institutionalized spouse or the community spouse has an ownership interest. The county board of social services shall establish a share of the resources to be attributed to the community spouse in accordance with this section....
1. The community spouse's share of the couple's combined countable resources is based on the couple's countable resources as of the first moment of the first day of the month of the current period of institutionalization beginning on or after September 30, 1989 and shall not exceed $84,120, as indexed annually in accordance with 42 U.S.C. § 1396r-5(g) and published as a notice in the New Jersey Register, and unless authorized in (a)4 or 5 below [inapplicable here]. The community spouse's share of the couple's resources shall be the greater of:
i. $16,824, as indexed annually in accordance with 42 U.S.C. § 1396r-5(g) and published as a notice in the New Jersey Register; or
ii. One half of the couple's combined countable resources.
2. In determining the resource eligibility of the institutionalized spouse, the community spouse's share of the resources is subtracted from the couple's total combined resources as of the first moment of the first day of the month of application for Medicaid. If the remaining resources are less than or equal to $2,000, the institutionalized spouse is resource eligible. If the remaining resources exceed $2,000, eligibility may not be established.
[N.J.A.C. 10:71-4.8 (emphasis added).]
We view the state regulations as consistent with and reflective of the federal statutes. No argument is made to the contrary.
The present debate is fueled by the absence of a clear statement in the law specifying the purpose and consequences of the "snapshot" resource evaluation that occurs, or may occur, at the start of a spouse's continuous institutionalization. The lack of clarity is also caused, in part, by the variety of circumstances that may be present at that point. A couple may or may not seek to apply for Medicaid benefits at the start of a spouse's continuous institutionalization. As we read the federal statute and state regulations, a resource evaluation is not mandatory at the time of institutionalization unless a Medicaid application is also made at that time.
*840 42 U.S.C.A. § 1396r-5(c)(1)(B), paraphrased, provides that the state shall assess and document the total value of joint spousal resources at the beginning of continuous institutionalization "[a]t the request" of either spouse. A fair hearing provision is included, but contingent upon an application for benefits being made. See 42 U.S.C.A. § 1396r-5(e)(2)(A).
Similarly, N.J.A.C. 10:71-4.8(a) states that the determination of resource eligibility, including establishment of the couple's combined countable resources as of the first period of institutionalization, "shall be made upon a request for a resource assessment in accordance with N.J.A.C. 10:71-4.9 or at the time of application for Medicaid benefits." In turn, N.J.A.C. 10:71-4.9(a) provides, "[a]t the beginning of the first continuous period of institutionalization... the institutionalized spouse or the community spouse ... may request an assessment of the couple's total countable resources. The purpose of the assessment is to establish the community spouse's share of the couple's total countable resources."
We believe that absent an accompanying Medicaid application, this process is informational only. It tells the couple which assets are countable and which may be excludable.[1] It informs them of the total value of countable assets and whether the community spouse's share thereof is above or below the maximum amount that the law then allows the community spouse to keep free of any obligation to expend it (the CSRA).
We do not find any basis for appellant's claim that the resource evaluation is fixed at the point of institutionalization and cannot be reevaluated at the point of application, which may be many years later. N.J.A.C. 10:71-4.8(a)(2) states that:
In determining the resource eligibility of the institutionalized spouse, the community spouse's share of the resources is subtracted from the couple's total combined resources as of the first moment of the first day of the month of application for Medicaid. If the remaining resources are less than or equal to $2,000, the institutionalized spouse is resource eligible. If the remaining resources exceed $2,000, eligibility may not be established.
The Division interprets this language as requiring an evaluation of resources at the point of application, not as requiring utilization of previously calculated resources at the time of application. We believe that in the context of the entire statutory and regulatory scheme, that interpretation is sustainable. For instance, N.J.A.C. 10:71-4.1(b) defines resources and goes on to state, "[b]oth liquid and nonliquid resources shall be considered in the determination of eligibility...." There is no formal determination of eligibility until application is made.
N.J.A.C. 10:71-4.1(e) provides in part:
Resource eligibility: Resource eligibility is determined as of the first moment of the first day of each month. If an individual or couple is resource ineligible as of the first moment of the first day of the month, subsequent changes within that month in the amount of countable resources will not affect the original determination of ineligibility. If resource eligibility is established as of the first moment of the first day of the month, resource eligibility is established *841 for the entire month regardless of any increase in the amount of countable resources.
1. This policy applies equally to individuals and couples in the month of application. Regardless of the date of application, resource eligibility is determined as of the first moment of the first day of that month.
When addressing excludable resources the regulations begin, "[a] resource which is classified as excludable shall not be considered either in the deeming of resources or in the determination of eligibility for participation in the Medicaid Only Program." N.J.A.C. 10:71-4.4(a). Again, an evaluation process at the point of eligibility is envisioned. Between initial evaluation and application, the nature of a resource, such as a house, may change from excluded to included or vice-versa, and new resources, such as an automobile, may be acquired that need to be added to the "excluded" list. Over and over, eligibility and resource evaluation are temporally linked. Eligibility is determined upon application.
These regulations appear consistent with federal statutes. 42 U.S.C.A. § 1396r-5(c)(2)(B), specifies, "resources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds the amount computed under subsection (f)(2)(A) of this section (as of the time of application for benefits)." The reference to (f)(2)(A) is to the CSRA and computation thereof.
Appellant relies, in part, on 42 U.S.C.A. § 1396r-5(c)(4), which states that once an institutionalized spouse is determined to be eligible for Medicaid benefits, "no resources of the community spouse shall be deemed available to the institutionalized spouse." A similar provision is N.J.A.C. 10:71-4.5(a)1 which states that, "[r]esource eligibility is determined as of the first moment of the first day of the month. Changes in the amount of countable resources subsequent to the first day of the month shall not affect eligibility." In both instances the focus is on assets acquired after eligibility. On one level it may seem anomalous to include the community spouse's resources and resource appreciation up to the point of eligibility but not thereafter. A distinction, however, is made in the statutory and regulatory scheme that cannot be ignored. Those portions of the statute or regulations that stand for the proposition that resources are to be determined at the time of application, see e.g., 42 U.S.C.A. § 1396r-5(c)(2) and N.J.A.C. 10:71-4.8(a)2, cannot be nullified because another statutory or regulatory provision excludes consideration of the community spouse's resources post-eligibility. One may argue over the logic of the provisions, but not over the obvious differentiation before and after eligibility.
In Atkinson, supra, the Minnesota Supreme Court was faced with essentially the same issues and arguments presented in this case. The question explored was what purpose and what goal is achieved by the financial analysis that occurs when one spouse is institutionalized, and how does that analysis relate to an application for Medicaid that may occur significantly later than the point of institutionalization. After quoting portions of 42 U.S.C.A. § 1396r-5 and noting the parallel provisions of Minnesota law, the court discussed the statutory history of the MCCA as follows:
The statutory history of 42 U.S.C. § 1396r-5 further supports our interpretation of the statute. The House Report accompanying the proposed spousal impoverishment provisions of the MCCA, which later became section 1396r-5, makes it clear that the purpose of section 1396r-5 is to prevent the community *842 spouse from being impoverished by having to spend down the entirety of the couple's assets to the SSI eligibility standards before the institutionalized spouse can become eligible for Medicaid benefits. [1988 U.S.C.C.A.N. 857, 888.] The Report does state that the spousal share and the limit of the community spouse's share are to be calculated only as of the time of institutionalization. Id. at 894. It does not, however, demonstrate an intent by Congress to prohibit states from reassessing a couple's assets and determining eligibility based on the assets available at the time of application for benefits. On the contrary, the Report states:
The Committee observes that, in many cases, the institutionalized spouse may not apply for Medicaid benefits until months after his admission to a nursing home. Often these individuals and their spouses have "spent down" a significant amount of their life savings to pay the nursing home charges. Repeated division of the couple's total resources into equal shares at each application or reapplication for benefits would result in the pauperization of the community spouse, as the couple's total resources would effectively be reduced to twice the resource eligibility standard, generally $3600, before the institutionalized spouse qualified for Medicaid. Precisely the opposite result is intended by the Committee. For this reason, the bill requires, in effect, that a "snapshot" of the couple's total resources be taken at the time of initial institutionalization, and that attribution of resources into spousal shares proceed on the basis of that "snapshot," regardless of the point at which the institutionalized spouse actually files application for benefits.

Id. at 894 (emphasis added). Clearly, the purpose of taking a "snapshot" of the couple's resources at the time of institutionalization is to establish the spousal share so that the couple's resources are not continually halved with each application or reapplication for benefits, thereby impoverishing the community spouse.
[Atkinson, supra, 564 N.W.2d at 214 n. 7.]
The Minnesota Supreme Court concluded:
While the interpretation urged by the Atkinsons is appealing from a policy standpoint because it would provide a greater measure of certainty by permanently fixing the amount that must be spent down to become eligible for MA [medical assistance] upon institutionalization, we are constrained by the plain language of the federal and state statutes: the spousal share is to be fixed based on the couple's assets as of institutionalization, but eligibility is to be determined by reference to the total assets owned by the couple at the time of application for medical benefits.
[Id. at 214-215.]
We agree. Spousal assets are determined at the time of institutionalization. The exempt portion of those assets, attributable to the community spouse, i.e., those assets not available for institutionalization expenses, are determined at that point and may not exceed a maximum amount calculated pursuant to a set formula, but subject to annual change in concert with the Consumer Price Index. Eligibility for Medicaid, however, is determined at the point of application by reference to the total assets owned by the couple at that time. The previously established amount of exempt assets attributable to the community spouse, plus $2,000 of assets attributable to the institutionalized spouse, constitute the asset cap that cannot be exceeded *843 at the time of application, unless that cap was increased to reflect a rise in the Consumer Price Index, see 42 U.S.C.A. § 1396r-5(g).
Although the statutes and regulations are not pellucidly drafted, we believe this interpretation most closely accords with the state and federal legislative intent. Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992); Accountemps Div. of Robert Half v. Birch Tree Group, Ltd., 115 N.J. 614, 622, 560 A.2d 663 (1989); Union County Bd. of Chosen Freeholders v. Union County Park Comm'n, 41 N.J. 333, 337, 196 A.2d 781 (1964). One of those legislative goals is to "protect community spouses from `pauperization' while preventing financially secure couples from obtaining Medicaid assistance." Blumer, supra, 534 U.S. ___, 122 S.Ct. at 967, 151 L.Ed.2d at ___. So too, although we are not bound by an agency's construction of the law, we acknowledge our obligation to defer to agency expertise when the agency is interpreting the statutes and regulations it is charged with enforcing. Merin, supra, 126 N.J. at 430, 436-437, 599 A.2d 1256 (1992). The agency's interpretation of a statute will prevail provided it is not plainly unreasonable. Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984).
Appellant also contends that a remand is required to establish the value of assets as of June 1, 1998, if it is found that the Division's method of calculating eligibility is correct. The DMAHS director, however, specifically found that on that date the couple's countable resources exceeded the maximum allowable amount. Although the director did not specify the calculations leading to that conclusion, as previously indicated, we have reviewed the record and we are satisfied that there was sufficient credible evidence in the record to support the agency's determination. No further hearing is required.
The final decision of the Division of Medical Assistance and Health Services is affirmed.
NOTES
[1] There are specific assets that are excluded, such as a principal residence, one automobile, personal effects, household goods and other resources as set out in N.J.A.C. 10:71-4.4. In the present case, there was some confusion at one point about the exclusion of certain realty owned by the couple, but that issue was settled and is no longer in contention.