# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0884-23

M.L.,

     Petitioner-Appellant,

v.

ESSEX COUNTY DIVISION
OF FAMILY ASSISTANCE
AND BENEFITS,

     Respondent-Respondent.

_____

Submitted March 4, 2025 – Decided March 18, 2025

Before Judges Smith and Chase.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Simon P. Wercberger, LLC, attorneys for appellant (Simon P. Wercberger, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae Park, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner M.L. appeals from the October 26, 2023 final agency decision of the Division of Medical Assistance and Health Services (DMAHS) denying him Medicaid benefits. Initially, the Essex County Division of Family Assistance and Benefits' (DFAB) denied M.L.'s original Medicaid application. After a hearing, an administrative law judge (ALJ) reversed DFAB in an initial decision, granting M.L. Medicaid benefits. In a final agency decision, DMAHS rejected the ALJ's initial decision. After a review of the record and the applicable law, we reverse and remand to DMAHS for proceedings consistent with this opinion.

I.

On March 31, 2023, petitioner,[1] an elderly nursing home resident, applied to DFAB for Medicaid benefits. On April 4, 2023, DFAB issued petitioner a follow-up letter requesting further documents to process the application. The letter stated, "[p]lease provide Wells Fargo Checking Account (ending [xxxx][2])

---

[1] Petitioner was represented by a Designated Authorized Representative (DAR), who was the point of contact between petitioner and DFAB for the March 31, 2023 application. For ease of reference, we refer solely to petitioner throughout.

[2] To protect the privacy of the petitioner, we do not include bank account numbers in this opinion.

A-0884-23

statements for the following periods: 12/2020-01/2021, 04/2021-05/2021 and 01/2022-02/2022. Please provide financial statements from 05/2018-09/2020. If you have a valid PAS[3] on file, please provide it." That same day, petitioner sent a request to Wells Fargo Bank (Wells Fargo) to supply "bank statement[s] on account number ending with [xxxx] from 03-01-2018 thr[ough] today 04-04-2023." The petitioner's deadline to reply to the follow-up letter was April 18, 2023. The record shows that a DFAB case worker received the Wells Fargo[4] information. DFAB issued no other follow-up request for additional information.

On May 5, 2023, DFAB denied petitioner's Medicaid application. The denial letter stated:

> Client failed to provide the necessary documentation within the allotted time frame of application being filed. Client failed to provide financial statements (including bank statements, pre-paid account statements and direct express statements) from April 2018 through September 2020 and explanations for $2,100 ATM withdrawal on 1/4/21, $3,000 withdrawal on 4/5/21 and $2,000 ATM withdrawal on 1/20/2022 all from Wells Fargo Checking Account ending in [xxxx].

---

[3] PAS is the acronym for Pre-Admission Screening.

[4] Although the DFAB caseworker received the documents before the DMAHS rejected M.L.'s first application, the record is unclear as to the exact date of receipt.

Subsequently, petitioner appealed the denial and filed a second application. On July 19, 2023, an ALJ conducted a hearing on the denial of the March 31 application. Two witnesses testified: the DFAB case worker, Tawana Lewis, and petitioner's DAR. Each witness testified about petitioner's Citizens Bank account statements, which he attached to his second Medicaid application, but not the first. Lewis testified that the petitioner's first Medicaid application would have been approved by DFAB had it included the Citizens Bank records.

On July 28, 2023, the ALJ issued an initial decision, reversing DFAB's denial. The ALJ found the "[petitioner] substantially complied with all regulations and directives of the case worker, and that [petitioner] provided all requested documentation as soon as same became available to him." The ALJ also made findings concerning the Citizens Bank statements, which were not part of the administrative appeal record. The court stated, "the Citizens Bank documents were procured by [petitioner] and received by [Lewis] a little over one month <u>after</u> the May 8, 2023, denial was issued." (Emphasis added.)

On October 26, 2023, DMAHS rejected the ALJ's initial decision and made findings. In its final administrative decision, the DMAHS found petitioner failed to timely provide all the required documents requested by DFAB. DMAHS found petitioner did "not ask for additional time to provide the

4

necessary information, nor was there any documented exceptional circumstance warranting an extension of time to produce the requested documents." DMAHS also found "the ALJ erroneously considered petitioner's submission of Citizen Bank documentation in reaching his decision since these documents had neither [been] provided to or considered by [DFAB] in its determination to deny [petitioner's] Medicaid application."

On appeal, petitioner argues DMAHS' reversal of the ALJ's initial decision was arbitrary, capricious, and unreasonable, and is unsupported by the evidence.

II.

Our review of final administrative decisions by DMAHS is generally limited. C.L. v. Div. of Med. Assistance & Health Services, 473 N.J. Super. 591, 597 (App. Div. 2022). "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of

A-0884-23

Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

"[W]e are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" C.L., 473 N.J. Super. at 598 (quoting R.S., 434 N.J. Super. at 261). Moreover, "[i]f our review of the record shows that the agency's finding is clearly mistaken, the decision is not entitled to judicial deference." A.M. v. Monmouth Cnty. Bd. of Soc. Servs., 466 N.J. Super. 557, 565 (App. Div. 2021) (first citing H.K. v. N.J. Dep't of Hum. Servs., 184 N.J. 367, 386 (2005), then citing L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 490 (1995)).

### III.

Petitioner argues the final agency decision was arbitrary, capricious, and unreasonable because DMAHS improperly rejected the ALJ's initial determinations that: petitioner substantially complied with the case worker's request; and petitioner's Medicaid application would have been approved had the Citizens Bank account been discovered earlier.

To reverse DFAB's denial, the ALJ relied on the DAR's and Lewis' testimony that petitioner's first application would have been approved had the

6

Citizens Bank information been supplied to DFAB with the first application. We are unpersuaded by the ALJ's analysis, as it was improper to consider the Citizens Bank documents, which were not part of the record on appeal. However, we conclude DMAHS' final decision was arbitrary, capricious, and unreasonable for different reasons.

A.

"Medicaid is a federally-created, state-implemented program that provides 'medical assistance to the poor at the expense of the public.'" In re Est. of Brown, 448 N.J. Super. 252, 256 (App. Div. 2017) (quoting Est. DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004)); See also 42 U.S.C. § 1396-1. To receive federal funding, the State of New Jersey must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

Pursuant to the New Jersey Medical Assistance and Health Services Act[5] DMAHS is responsible for administering Medicaid. N.J.S.A. 30:4D-4. Regulations adopted in accordance with the authority granted to the Commissioner of the Department of Human Services govern eligibility for Medicaid in New Jersey. N.J.S.A. 30:4D-7. The DMAHS is the agency within

---

[5] N.J.S.A. 30:4D-1 to -19.5.

the Department of Human Services that administers the Medicaid program. N.J.S.A. 30:4D-5; N.J.A.C. 10:49-1.1.

Through its regulations, DMAHS establishes "policy and procedures for the application process." N.J.A.C. 10:71-2.2(b). "[T]o be financially eligible, the applicant must meet both income and resource standards." Est. of Brown, 448 N.J. Super. at 257; see also N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a). One of the goals of Medicaid is to "'provide[] medical assistance to needy persons who are institutionalized in nursing homes as [a] result of illness or other incapacity.'" R.S., 434 N.J. Super. at 258 (quoting M.E.F. v. A.B.F., 393 N.J. Super. 543, 54 (App. Div. 2007)).

The local County Welfare Agency (CWA) and its case workers "exercise direct responsibility in the application process to . . . [r]eceive applications." N.J.A.C. 10:71-2.2(c)(2). The case worker is charged with evaluating an applicant's eligibility for Medicaid benefits. N.J.S.A. 30:4D-7a; N.J.A.C. 10:71-2.2(a); N.J.A.C. 10:71-3.15. "The process of establishing eligibility involves a review of the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9.

While the applicant is "the primary source of information," the case worker is responsible for making "the determination of eligibility and to use

secondary sources when necessary, with the applicant's knowledge and consent." N.J.A.C. 10:71-1.6(a)(2). The case worker is not limited in the use of secondary sources to obtain necessary verification information. N.J.A.C. 10:71-4.1(d)(3) states:

> [t]he [CWA] shall verify the equity value of resources through appropriate and credible sources . . . . If the applicant's resource statements are questionable, or there is reason to believe the identification of resources is incomplete, the CWA shall verify the applicant's resource statements through one or more third parties.

The applicant is responsible for cooperating fully with the verification process if the case worker must contact a third-party to verify an applicant's resources. N.J.A.C. 10:71-4.1(d)(3)(i). The agency may perform a collateral investigation to "verify, supplement or clarify essential information." N.J.A.C. 10:71-2.10(b). Under N.J.A.C. 10:71-2.2, the case worker must communicate with the applicant regarding the claimed deficiencies and then, under N.J.A.C. 10:71-2.10(b), provide an opportunity for the applicant to verify, supplement or clarify the information before denying an application.

## B.

Based on our review of the record and applicable legal principles, we conclude that DMAHS' final decision was arbitrary, capricious, and

unreasonable because Lewis, the DFAB case worker, failed to follow agency regulations when evaluating petitioner's first Medicaid application.

After Lewis sought additional financial information (in the April 4th follow-up letter), petitioner obtained the requested information from Wells Fargo promptly and submitted it. The record shows that the information Lewis received did not contain all the data DFAB required to evaluate the Medicaid application. However, Lewis failed to notify petitioner that the information supplied was insufficient to process the application.

N.J.A.C. 10:71-2.2(e)(1) to (3) requires a petitioner to: "[c]omplete, with assistance from the [case worker] if needed, any forms required by the [case worker] as a part of the application process; [a]ssist the [case worker] in securing evidence that corroborates his or her statements; and [r]eport promptly any change affecting his or her circumstances."

N.J.A.C. 10:71-2.2(c)(1) to (5), requires a caseworker to: "[i]nform the applicants about the purpose and eligibility requirements for Medicaid Only, inform them of their rights and responsibilities under its provisions and inform applicants of their right to a fair hearing; [r]eceive applications; [a]ssist . . . applicants in exploring their eligibility for assistance; [m]ake known to . . . applicants the appropriate resources and services both within the agency and the

community, and, if necessary, assist in their use; and [a]ssure the prompt and accurate submission of eligibility data to the Medicaid status files for eligible persons and prompt notification to ineligible persons of the reason(s) for their ineligibility."

State agencies must "turn square corners" with the public they serve in carrying out their statutory responsibilities. W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 561-62 (1989). When this bedrock principle is read together with the above regulations, we easily reach the dispositive legal conclusion: both the DFAB case worker, Lewis, and the petitioner had a duty under the regulations to take affirmative steps to communicate with each other regarding the March 31 pending application. The scope of this joint duty clearly includes the parties' efforts to clarify prior communications about a pending application.

After petitioner received the April 4 request for follow-up information from Lewis, he promptly submitted the Wells Fargo documents. Upon Lewis' receipt, her duty was to review the pending application and notify petitioner concerning what, if any, additional information was required to make an eligibility determination. The record shows Lewis failed to do so. Instead, she denied the March 31 application, and only then informed petitioner his

application was deficient. It follows that DMAHS' final administrative decision adopting DFAB's improper denial of the March 31 application was arbitrary, capricious and unreasonable.

We reverse the DMAHS' final decision, and remand to the agency for further proceedings. Petitioner's March 31, 2023 application shall be reinstated. The DMAHS, with the necessary assistance of DFAB, shall: identify the remaining records needed to verify petitioner's Medicaid eligibility; request, with specificity, any necessary verification documents; provide a reasonable time for petitioner to submit responsive documents; and then make a new eligibility determination for petitioner in a manner consistent with the principles we have outlined here.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division