### In re ESTATE OF Mark DOBBINS, Deceased.

Court of Appeals of Tennessee, at Jackson.

Sept. 14, 1998.

Application for Permission to Appeal Denied by Supreme Court Feb. 8, 1999.

---

Fred M. Ridolphi, Jr., Humphreys Dunlap Wellford Acuff & Stanton, Memphis, Tennessee, Attorney for Plaintiff/Appellant Eddie Joy Dobbins.

Charles G. Black, Memphis, Tennessee, Attorney for Defendant/Appellee Earthie Dobbins.

W. Meredith Clark, Memphis, Tennessee, Attorney for Defendant/Appellee Betty Dobbins.

FARMER, J.

On January 28, 1992, Mark Dobbins was accidentally shot and killed at the Orpheum Theater in Memphis at the age of 17. The appellant, Eddie Joy Dobbins, is Mark's paternal grandmother in whose custody he had remained for the seven years preceding his death. Following Mark's death, Eddie Joy[1] filed three wrongful death lawsuits, individually and as next friend for her grandson, against David Industries, Rita Garth and the Memphis Development Foundation, respectively. The lawsuits were ultimately settled for a net total of approximately $119,000. Thereafter, the probate court issued letters

---

1. Due to the parties' common surname, we have    referred to them by their given names for clarity.

of administration to Mark's uncle, George Dobbins, Jr., for the purpose of distributing the settlement proceeds which comprised the entire estate. Mark's natural parents, Earthie Dobbins and Betty Hinds Dobbins, petitioned the court to require the administrator to distribute to them their respective share of the proceeds. Eddie Joy opposed such distribution, asserting that the parents had abandoned their son prior to his death and that she was therefore entitled to the entire proceeds. Betty then moved for summary judgment and Earthie, for partial summary judgment, asserting their entitlement to the funds. The probate court interpreted the wrongful death statutes to conclude that only the natural parents of Mark were entitled to receive the settlement proceeds and granted the motions.[2] After further hearing, the court held that Eddie Joy was entitled to be reimbursed from the net proceeds distributed to Earthie for certain child support payments for which he was in arrears.[3] Eddie Joy has appealed from the trial court's decision. Upon review of the record, we affirm for the reasons hereinafter stated.

Mark Dobbins was born in December 1974 to Betty and Earthie Dobbins. They had one other child, Yvonne Marie Dobbins. They were divorced in 1976 with Betty receiving custody of the children. Earthie was ordered to pay child support. In March 1985, Earthie petitioned the juvenile court to remove Mark and his sister from Betty's custody and to place them in the custody of his parents, Eddie Joy and George Dobbins, Sr. The court approved the petition upon finding the children to be dependent and neglected and awarded the custody of both children to their paternal grandparents.

Mark remained in his grandparents' custody until his death.[4] Mark was not married at the time of his death and had no children.

In December 1995, Betty and Earthie filed similar petitions with the probate court claiming to be the deceased's sole heirs at law and requesting that the settlement proceeds be distributed in accordance with the laws of intestate succession. Eddie Joy answered the petitions, denying their entitlement to any of the proceeds and asserting that she had "expended substantial sums of money" in fulfilling her custodial responsibilities regarding Mark for which she sought reimbursement; that Earthie was in substantial arrears in child support payments to her at the time of Mark's death, which called for the dismissal of his petition in accordance with T.C.A. § 31–2–105(b);[5] and that both Earthie and Betty had "abandoned" their rights to the proceeds. Eddie Joy requested that both petitions be dismissed and that the administrator make immediate distribution to her of all monies to which she was entitled. The administrator also filed answers to the petitions.

As hereinabove noted, both Earthie and Betty moved for summary or partial summary judgment. Eddie Joy filed a memorandum in opposition to the motions asserting that genuine issues of material fact existed as to whether Earthie and Betty had surrendered their parental rights to Mark due to their abandonment of him several years preceding his death and had thus foregone any right to recover the proceeds. Eddie Joy relied upon the statutory definition of abandonment set forth under T.C.A. § 36–1–113, pertaining to the termination of parental rights, and claimed that the actions of both

---

2. A separate issue was raised as to whether Earthie had waived his right to the settlement proceeds in one of the wrongful death lawsuits. In addressing Eddie Joy's motion to alter or amend the judgment, the probate court held that she lacked standing to contest the distribution of the wrongful death proceeds and thus to question the alleged waiver. Thus, it was held that Earthie was entitled to receive his respective share of the proceeds obtained in all three lawsuits.

3. The court ordered that further hearing be held to determine the appropriate amount. The

court's judgment was rendered final pursuant to Rule 54.02 T.R.C.P.

4. Mr. Dobbins, Sr. has since died.

5. This section provides:

In no event shall a parent be permitted to inherit through intestate succession until all child support arrearages together with interest thereon at the legal rate of interest computed from the date each payment was due have been paid in full to the parent ordered to receive such support or to such parent's estate if deceased.

parents with regard to their son met the criteria outlined thereunder. Her affidavit states that, after the change in custody, Betty never financially supported her son and maintained "virtually no contact whatsoever" with him and that Earthie made no financial contribution toward the support of his son after 1988 and only saw him for a period of approximately two to three weeks, after which time he "had virtually no contact" with Mark. The affidavit further states that Eddie Joy and her husband gave Mark financial and emotional support and raised him as if he were their own son at a time when his natural parents failed to do so. A similar affidavit was submitted by Retha Partee, Earthie's sister. The depositions of Betty and Earthie were also submitted for the court's consideration.

In granting the respective motions, the trial court found as follows:

The Respondent ... claims that questions as to the Petitioners' abandonment of their son create genuine issues of material fact and therefore summary judgment should not be granted.

.... The Respondent and the Petitioners are in agreement that no legal proceedings had been brought prior to the [sic] Mark's death, seeking to adjudicate his having been abandoned by Betty and Earthie Dobbins. Additionally there is no dispute as to the fact that Eddie Joy and George Dobbins never adopted Mark.

. . . .

... The often followed Tennessee Supreme Court case of *Memphis Railway Company v. Cooper*, [203 Tenn. 425], 313 S.W.2d 444 (1958), clearly states that the distribution of wrongful death proceeds falls under Tennessee's wrongful death statute. *Memphis Railway Company v. Cooper*, [203 Tenn. 425], 313 S.W.2d 444, 448 (1958). The applicable Tennessee wrongful death statute for this cause is T.C.A. Sec. 20–5–106(a) ...

. . . .

In applying T.C.A. Sec. 20–5–106(a) to the facts of this case, the Court believes the only persons who would be entitled to receive the proceeds of the wrongful death lawsuits in place of his natural parents would be legally adoptive parents. The facts of this case are clear that the minor child was never legally adopted by anyone. At the time of his death, Mark's legal parents were Earthie and Betty Dobbins. It is true that Mark was in the custody of his grandparents at the time of his death, but there had been no adoption proceedings.

... If T.C.A. Sec. 20–5–106 required the Court to examine the worthiness of the beneficiary of wrongful death proceeds, then abandonment would unquestionably be a material fact in determining to whom the proceeds should be distributed....

. . . .

... There is no language in the Tennessee wrongful death statute that permits this Court to enter into considerations as to the worthiness or lack of worthiness of beneficiaries of proceeds from wrongful death lawsuits.

Because the question of worthiness of the beneficiaries of wrongful death proceeds is outside this Court's consideration, so too is an examination as to whether the [sic] Mark was abandoned by his parents.... Accordingly there remains no genuine dispute of material fact in the consideration of who is entitled under T.C.A. Sec. 20–5–106 to the wrongful death proceeds of the Decedent.

Consequently, the court concluded that Earthie and Betty were entitled to their respective share of the net proceeds, but recognized that an issue remained as to whether Earthie had waived his right to his share with respect to the suit against the Memphis Development Foundation.

Eddie Joy moved to alter or amend the judgment on the basis that the trial court had failed to address (1) the applicability of T.C.A. § 31–2–105(b); (2) whether she was entitled to be reimbursed out of the funds held by the court for the reasonable and necessary expenses incurred in raising Mark and his sister while they were in her legal custody; and (3) whether Earthie had effectively waived his right to any of the proceeds in Mark's estate by executing a receipt and waiver. After further hearing, the court denied the motion with respect to the applicability of T.C.A. § 31–2–105(b). The court also ruled that Eddie Joy lacked standing to

contest the validity of the purported waiver by Earthie because she was not entitled to receive any of the wrongful death proceeds under the wrongful death statute, nor was she entitled to inherit any part of Mark's estate under the laws of intestate succession. The court found that the only person who could lawfully challenge the validity of the waiver was Betty who had declined to do so. Thus, the court held that Earthie was also entitled to his respective share of the net proceeds resulting from the Memphis Development Foundation lawsuit.[6] Finally, the court held that Eddie Joy was entitled to reimbursement for child support.

We perceive the issue on appeal as whether the trial court was correct in its decision that Eddie Joy is not entitled to receive any of the wrongful death settlement proceeds recovered as a result of the death of her grandson. Resolution of this issue entails a proper interpretation of the wrongful death statutes, particularly T.C.A. § 20-5-106, which read as follows at the time the wrongful death lawsuits were instituted:

**Injury resulting in death—Succession to cause of action—Beneficiary who is minor or legally incompetent.**—(a) The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin; or to the person's personal representative, for the benefit of the person's surviving spouse or next of kin; or to the person's natural parents or parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent and had not been legally surrendered by them, otherwise to the person's legally adoptive par-

ents or parent, or to the administrator for the use and benefit of the adoptive parent or parent; the funds recovered in either case to be free from the claims of creditors.[7]

As stated by this court in *Mangrum v. Owens*, 917 S.W.2d 244 (Tenn.App. 1995):

The rule of statutory construction to which all others must yield is that the intention of the legislature must prevail. *Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d 495, 498 (Tenn.App.1983); *City of Humboldt v. Morris*, 579 S.W.2d 860, 863 (Tenn.App.1978). "[L]egislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn.1977). The Court has a duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant. The Court must give effect to every word, phrase, clause, and sentence of the Act in order to achieve the Legislature's intent, and it must construe a statute so that no section will destroy another. *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn.App.1983); *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975).

*Mangrum*, 917 S.W.2d at 246.

Eddie Joy contends on appeal that she is entitled to recover all of the settlement proceeds because the natural parents of the deceased had "legally surrendered" his custody to her and her husband by order of the juvenile court prior to his death. Eddie Joy claims that, "[d]ue to their abandonment of the decedent, as well as in recognition of the love, time, and resources which [she] and George Dobbins [Sr.] contributed to the decedent as his sole legal custodians for the last

---

**6.** The record indicates that the issue of whether Earthie had waived his rights to these particular proceeds, along with the issue of fraud, was also pursued separately in circuit court. The record does not indicate the outcome of that case or what effect the probate court's ruling had thereon.

**7.** This section was amended in May 1998 to read:

[O]r to the person's natural parents or parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent and had not been legally surrendered or abandoned by them pursuant to any court order removing such person from the custody of such parents or parent;

years of his life, it should be held that the parental rights of [Earthie and Betty] were surrendered...." Eddie Joy contends that parental surrender occurred not only when she was awarded legal custody after a finding of dependency and neglect, but also by the subsequent conduct of Earthie and Betty toward their child. Consequently, it is claimed that a hearing should be held on the factual issue of surrender.

We believe Eddie Joy has misinterpreted § 20–5–106 and has confused the meanings of legal custody and legal surrender. Chapter 1 of Title 37 pertains to "juvenile courts and proceedings." Section 37–1–102(8) defines "custody" as

The control of actual physical care of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well being of the child. "Custody," as herein defined, relates to those rights and responsibilities as exercised either by the parents or by a person or organization granted custody by a court of competent jurisdiction. "Custody" shall not be construed as the termination of parental rights set forth in § 37–1–147. "Custody" does not exist by virtue of mere physical possession of the child;

T.C.A. § 37–1–147 states:

(a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

....

(c) The effect of the court's order terminating parental or guardian right shall be as provided in § 36–1–113.

Section 36–1–113 provides, in part pertinent:

**Termination of parental rights.**—(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

(b) The prospective adoptive parent(s) of the child, any licensed child-placing agency having custody of the child, the child's guardian ad litem, a court appointed special advocate (CASA) agency, or the department shall have standing to file a petition pursuant to this part or pursuant to title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of such child. The prospective adoptive parents shall have standing to request termination of parental or guardianship rights in the adoption petition filed by them pursuant to this part.

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Chapter 1 of title 36 pertains to adoption. Section 36–1–102(45) defines "surrender" as "a document executed under the provisions of § 36–1–111 or under the laws of another state or territory or country, by the parent or guardian of a child, by which that parent or guardian relinquishes all parental or guardianship rights of that parent or guardian to a child, to another person or public child welfare agency or licensed child-placing agency for the purposes of making that child available for adoption;".

■ Under the statutes quoted above, a legal surrender of parental rights denotes a termination thereof and is totally separate and distinct from the situation where a parent maintains his/her parental rights but has relinquished legal custody to another. In *Mangrum v. Owens,* the court construed § 20–5–106 to conclude that the statute "grants the right of action for the wrongful death of a child to the parents (if both are living and if not to the surviving parent), if, at the time of the child's death, the child was in the custody of both parents or one of the parents and there had been no *termination of parental rights by surrender.*" *Mangrum,* 917 S.W.2d at 246. (Emphasis added). If, in the present case, it were thought that the natural parents had legally abandoned their son prior to his death, then Eddie Joy had standing, pursuant to § 36–1–113, to file a petition with the court seeking termination

of their parental rights. The record clearly indicates that no such action was taken.

Section 20–5–106 provides that the deceased's right of action may pass "to the person's natural parents or parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent and had not been legally surrendered by them, otherwise to the person's legally adoptive parents or parent, or to the administrator for the use and benefit of the adoptive parents or parent;". This portion of the statute clearly pertains specifically to minor children who are *either* in the legal custody of their natural parents or parent at the time of their death or whose custody has been legally surrendered by their natural parents so as to terminate their parental rights which would allow an adoption to take place. Consequently, the right of action of a deceased minor child passes to his/her natural parents or parent or next of kin if that child at the time of death was in the custody of the natural parents or parent, who had maintained their parental rights. If this is not the case, then the right of action expressly passes to the adoptive parents or parent of that deceased minor child. These are the only two scenarios addressed by the statute relating specifically to minor children and we find neither applicable under the undisputed facts before us. Clearly, there was no adoption of Mark, nor was he in the legal custody of his natural parents or parent at the time of his death. We further conclude that there had not been a legal surrender of Earthie and Betty's parental rights as to Mark.

Having determined this particular portion of the statute inapplicable, we turn our attention to the preceding provision which provides that the decedent's right of action shall pass to the surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin. The court of appeals in *Foster v. Jeffers*, 813 S.W.2d 449 (Tenn. App.1991), recognized that "[t]he wrongful death statutes taken together set forth the priorities among those persons entitled by T.C.A. § 20–5–107 to bring a wrongful death action." *Foster*, 813 S.W.2d at 451. The party with the superior right is the surviving spouse and if there is no surviving spouse,

then the children of the deceased have priority and if no children, then the priority passes to the next of kin. *Id.* *Foster* holds that if none of the statutorily prescribed beneficiaries exist, then the cause of action is abated because the existence of one of these beneficiaries is a prerequisite to bringing a wrongful death action. *Id.* In the present case, Mark Dobbins was not married at the time of his death and had no children. Thus, the only persons entitled to succeed to his right of action for wrongful death are his "next of kin."

In *Sneed v. Henderson*, 211 Tenn. 572, 366 S.W.2d 758 (1963), our supreme court defined the term "next of kin" under the law of descent and distribution as those "persons nearest of kindred to the decedent, that is, those who are most nearly related to him by blood." The court continued:

> The strict legal meaning of the phrase "next of kin" is "next or nearest in blood." In ascertaining who the next of kin is, the law follows the line of consanguinity. Such is the general rule of the common law. It is the same in this state under our general statute of distribution. It is so in every case, unless there be an express statutory exemption. *Helms v. Elliott*, 89 Tenn., 446, 450, 14 S.W. 930, 931, 10 L.R.A. 535; *Tudor, et al. v. Southern Trust Co., et al.*, 193 Tenn., 331, 246 S.W.2d 33.

*Sneed*, 366 S.W.2d at 760. The natural parents of a deceased child are equally the next of kin. *Mangrum*, 917 S.W.2d at 245 n. 1.

Based on the foregoing, we conclude that under the facts presented Eddie Joy is not entitled to recover any of the wrongful death proceeds.[8] We recognize that this result may seem rather harsh considering that Eddie Joy loved and provided for her grandson for at least the seven years prior to his death and that the contact and care actually provided by the natural parents after the loss of legal custody remains questionable. However, we agree with the trial court that the question of abandonment is not material to the issue now before us. In *Spurling v. Johnson*, 747 S.W.2d 350 (Tenn. App.1987), the court of appeals considered the issue of whether a divorced father was entitled to share with his ex-wife in the pro-

---

8. We make no determination here regarding Eddie Joy's standing to bring the three wrongful

ceeds recovered for the wrongful death of their minor daughter. At the time of the child's death, the father was in arrears in child support and had maintained minimal contact with the child during the five years preceding her death. *Spurling*, 747 S.W.2d at 351. *Spurling* held that the distribution of the proceeds involved were to be made in accordance with the wrongful death statutes rather than those of descent and distribution, as clearly mandated by the legislature, and that the father was entitled to his respective share notwithstanding his actions toward the child in the five years preceding her death. *Id.* at 352. *Spurling* reasoned:

The appellate courts of this State discussed the effect of abandonment by a parent over 70 years ago in *Heggie v. Barley*, 5 Tenn.Civ.App. 78, 82 (1914), and in doing so used the following language:

[O]ur statutes providing for recoveries for personal injuries negligently inflicted resulting in deaths, and designating for whose benefit such recoveries may be had are clearly in the nature of statutes providing for the descent and distribution of estates, and we are of opinion that the Courts can no more inquire into the worthiness or unworthiness of such beneficiaries in such personal injury cases than they can inquire into the worthiness or unworthiness of those who are designated as beneficiaries of the estates of decedents, and that the Courts cannot deny relief because of unworthiness in either case unless authorized so to do by some statute.

*Id.*

The judgment of the trial court is hereby affirmed and this cause remanded thereto for any further proceedings consistent with this opinion. Costs are assessed against Eddie Joy Dobbins, for which execution may issue if necessary.

HIGHERS and LILLARD, JJ., concur.

death lawsuits in circuit court as this issue is not before us. We simply note that in view of our ruling, her actions could have only been taken in an administrative capacity for the benefit of those persons with statutory priority. *See Foster v. Jeffers*, 813 S.W.2d at 452.