# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 27, 2012 Session

## BETTY L. McCOLLOM v. GRAHAM N. McCOLLOM

**Appeal from the Chancery Court for Sumner County**
**No. 2010C-177      Tom E. Gray, Chancellor**

---

**No. M2011-00552-COA-R3-CV - Filed April 12, 2012**

---

This appeal arises from the filing of a Petition in the Chancery Court requesting relief pursuant to the Medicare Catastrophic Coverage Act, 42 U.S.C. § 1396r-5, to increase the community spouse's Minimum Monthly Maintenance Needs Allowance and Community Spouse Resource Allowance. The trial court made the finding that the community spouse had not demonstrated "exceptional circumstances resulting in significant financial duress;" nevertheless, the court granted the community spouse the requested relief and awarded her the entirety of her husband's income and the couple's assets. The Tennessee Department of Human Services appealed contending the community spouse must demonstrate "exceptional circumstances resulting in significant financial duress" as a condition precedent to being entitled to the relief. We agree. Finding that the trial court applied an incorrect legal standard in granting the relief, we reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, and Sue A. Sheldon, Senior Counsel, for the intervenor/appellant, Tennessee Department of Human Services.

Timothy L. Takacs and Barbara Boone McGinnis, Hendersonville, Tennessee, for the appellee, Betty L. McCollom.

Gary A. Hain, Hendersonville, Tennessee, for the respondent/appellee, Graham N. McCollom.

**OPINION**

Betty L. McCollom and Graham N. McCollom, husband and wife, have been married all of their adult lives. Mrs. McCollom is 74 years old and she lives independently, although she has hypertension, high cholesterol, hypothyroidism, and arthritis. Mr. McCollom suffers from Parkinson's disease and dementia, and is in need of constant care.

In August 2010, Mrs. McCollom filed a Petition in the Sumner County Chancery Court requesting relief pursuant to the Medicare Catastrophic Coverage Act, 42 U.S.C. § 1396r-5. In the petition, she sought to obtain her institutionalized husband's entire Social Security income, transfer the entirety of the parties' countable assets to her, and authorize an increase in her Community Spouse Resource Allowance (CSRA).

The Tennessee Department of Human Services (hereinafter "the Department") intervened with court approval and filed a response in opposition to the petition contending that Mrs. McCollom was not entitled to an increase in the CSRA because she failed to demonstrate "exceptional circumstances resulting in significant financial duress" and therefore was not eligible to have the statutory caps on her Minimum Monthly Maintenance Needs Allowance (MMMNA) and CSRA increased.[1]

A hearing occurred on January 28, 2011. At the hearing, Mrs. McCollom testified that her husband was in the Gallatin Health Care Center at the time of the filing of the petition; however, she decided to take him home in October 2010 due to the cost of the facility.[2] She served as his primary caregiver, but she found it necessary to spend approximately $2,500 per month for assistance in caring for her husband at home. Mrs. McCollom further testified that she believed she could no longer care for her husband at home and believed the cost of returning him to Gallatin Health Care would be $7,000 per month. She owed Gallatin Health Care $10,000 at the time of the hearing.

Mrs. McCollom submitted an Income and Expense Statement at the hearing. Her social security income is $980 per month and Mr. McCollom's is $1,616.[3] Mrs. McCollom

---

[1]The Tennessee Department of Human Services is the agency that administers Medicaid. Tenn. Comp. R. & Regs. 1240-03-01-.01

[2]A transcript of the hearing was not provided. However, the parties submitted an Agreed Statement of the Evidence pursuant to Tennessee Rule of Appellate Procedure 24(c).

[3]If Mr. McCollum were to predecease Mrs. McCollum, Mrs. McCollum would receive Mr. (continued...)

claimed monthly expenses of $3,836.97 on the Statement; however, she testified that she no longer spent the amounts allotted for newspapers and magazines, and recreation, vacation, and entertainment, which reduced her claimed expenses by $442.86. She testified that $34,000 of a $50,000 Certificate of Deposit had been spent since the filing of the petition and thus the couple's liquid resources had decreased from $354,000 as alleged in the petition to $323,000 at the time of the hearing.

The Department submitted as an exhibit its proposed list of reductions and recommendations for Mrs. McCollom's monthly expenses, in which it recommended that Mrs. McCollom have a monthly expense of $3,036.46. At the conclusion of the hearing, the court took the matter under advisement.

The trial court entered an order on February 9, 2011, granting the requested relief. The trial court found that Mrs. McCollom's reasonable monthly expenses were $3,485.49 and that the parties' countable assets were approximately $360,000. The trial court found that Mrs. McCollom was in need of support from her husband and that the increase in Mrs. McCollom's CSRA would "minimize the likelihood of spousal impoverishment and is necessary in order to carry out the intent of the [Medicare Catastrophic Coverage Act]." The trial court also made a specific finding that Mrs. McCollom had not demonstrated "exceptional circumstances resulting in significant financial duress." The Department filed a timely appeal.

## ANALYSIS

The dispositive issue in this case is whether the community spouse, the spouse who is not institutionalized in a health care facility, requesting relief pursuant to the Medicare Catastrophic Coverage Act, 42 U.S.C. § 1396r-5, must demonstrate "exceptional circumstances resulting in significant financial duress" to be eligible for relief. The Department asserts that demonstrating "exceptional circumstances resulting in significant financial duress" is a condition precedent to be eligible to an increase of the MMMNA and CSRA. Mrs. McCollom asserts it is not a requirement when the relief is sought through the courts instead of the administrative process, the so-called Fair Hearing process. She asserts that when a party elects to pursue an increase of the MMMNA and CSRA through court order, as opposed to an administrative hearing, a demonstration of exceptional circumstances is not required.

_____

[3](...continued)
McCollum's social security income amount and not her own.

I. OVERVIEW OF MEDICARE CATASTROPHIC COVERAGE ACT

In order to address the issue on appeal, a brief discussion of the Medicare Catastrophic Coverage Act of 1988 is necessary. Medicaid is a part of Title XIX of the Social Security Act and provides "medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependent children or qualified pregnant women or children." 42 C.F.R. § 430.0. Medicaid in Tennessee is administered by the Tennessee Department of Human Services. Tenn. Comp. R. & Regs. 1240-03-01-.01. Prior to the adoption of the Medicare Catastrophic Coverage Act, 42 U.S.C. § 1396r-5, (hereinafter "the Act"), "state standards often left a spouse living at home (called the 'community spouse') destitute, the couple's assets drained to qualify his or her mate (the 'institutionalized spouse') for Medicaid, and the couple's posteligibility income diminished to reduce the amount payable by Medicaid for institutional care." *Wisconsin Dep't of Health and Family Servs. v. Blumer*, 534 U.S. 473 (2002). This was because "states generally considered the income of either spouse to be 'available' to the other." *Id*. at 479.

The Act created "intricate and interlocking requirements," referred to as the "'spousal impoverishment' provisions,' which responded to the problems associated with Medicaid by including in the Medicaid statute requirements with which States must comply in allocating a couple's income and resources." *Id*. at 473, 480. These provisions direct that in a month when one spouse was institutionalized, the income of the community spouse was deemed unavailable for the institutionalized spouse. *Id*. (citing § 42 U.S.C. § 1396r-5(b)(1) (1994)). Additionally, the Act requires states to set a Minimum Monthly Maintenance Needs Allowance (MMMNA) for the community spouse. *Id*. (citing § 1396r-5(d)(3) (1994)). The MMMNA is calculated by multiplying the federal poverty level for a couple by a percentage set by the state. 42 U.S.C. § 1396r-5(d)(3) (2010).[4] The Act mandates that the percentage must be at least 150%, but no more than a statutory cap, which periodically changes.[5] 42 U.S.C. § 1396r-5(d)(3) (2010). During the period relevant to this action, the MMMNA in Tennessee was $1,822.[6]

The Act also addresses the allocation of the couple's resources for the purpose of determining Medicaid eligibility. 42 U.S.C. § 1396r-5(c), (f). The Act provides that a portion

[4]The version of the statute to which this court will cite is the 2010 version in effect at the time of the filing of Mrs. McCollom's petition.

[5]The 150% minimum has been in place since 1992. 42 U.S.C. § 1396r-5(d)(3)(B)(iii).

[6]We used this figure based upon the Agreed Statement of the Evidence.

of the couple's assets will be reserved for the community spouse, which is referred to as the Community Spouse Resource Allowance (CSRA). 42 U.S.C. § 1396r-5(c), (f). "To calculate the CSRA, the couple's jointly and separately owned resources are added together as of the time the institutionalized spouse's institutionalization commenced; half of that total, subject to certain limits, is then allocated to the community spouse." *Blumer*, 534 U.S. at 473 (citing 42 U.S.C. §§ 1396r-5(c)(1)(A), 2(B), (f)(2)(A), (g) (1994)). "The CSRA is deemed unavailable to the institutionalized spouse in the eligibility determination, but all resources above the CSRA (excluding a $2,000 personal allowance reserved for the institutionalized spouse under federal regulations) must be spent before eligibility can be achieved." *Id*. at 474 (citing 42 U.S.C. § 1396r-5(c)(2)). The upper limit on the CSRA at the time relevant to this action was $109,560. Tenn. Comp. R. & Regs. 1240-03-03-.03(9)(b). If a spouse's income is less than the MMMNA and the amount of income generated by a standard CSRA does not cover the shortfall, the Act requires that a new CSRA amount be substituted that is adequate to provide the MMMNA. 42 U.S.C. § 1396r-5(e)(2)(C).

A couple may obtain a higher CSRA and MMMNA through a "fair hearing" mechanism provided for in the Act. 42 U.S.C. § 1396r-5(e). The Act provides that:

> *If either such spouse establishes that the community spouse needs income*, above the level otherwise provided by the minimum monthly maintenance needs allowance, *due to exceptional circumstances resulting in significant financial duress*, there shall be substituted, for the minimum monthly maintenance needs allowance in subsection (d)(2)(A) of this section, an amount adequate to provide such additional income as is necessary.

(emphasis added).

In 2000, this court held in *Blumberg v. Tennessee Department of Human Services* that the Act provided a second method for obtaining an increase in the CSRA and the MMMNA by a "judicial option for court ordered support." *Blumberg*, No. M2000-00237-COA-R3-CV, 2000 WL 1586454, at *1 (Tenn. Ct. App. Oct. 25, 2000). In *Blumberg*, the husband of an institutionalized spouse filed a petition in the circuit court seeking a transfer of his wife's marital property and an increase in his MMMNA. *Id*. The court ordered that all of the wife's income be paid to husband and held that the community spouse monthly income allowance not be included in the patient liability computation. *Id*. However, the Department of Human Services had not received notice of the filing of the complaint by husband. *Id*. Thereafter, husband filed a Medicaid application for his wife, who was then approved for Medicaid benefits by the Department. *Id*. Husband's request for income allocation was denied and the Department ruled that wife's monthly income was to be applied to her patient liability instead of husband's court-ordered income allowance, in essence ignoring the circuit court's order.

*Id*. The wife then filed an appeal of the Department's ruling seeking an administrative hearing. *Id*. Following a hearing, the Department denied the wife's appeal and the Department's previous ruling was upheld. *Id*. The husband then filed a petition for review in the chancery court, which affirmed the Department's decision. *Id*. The chancery court's decision was based in part on the finding that the circuit court's order of spousal support was not validly adjudicated because the Department had not received notice of the proceedings,[7] and, therefore, it was precluded from an opportunity to be heard.[8] *Id*. Husband appealed to this court. *Id*.

The issue in *Blumberg* was whether the Department was required to follow the order of the circuit court, which granted the MMMNA and CSRA relief, and whether the chancery court exceeded its jurisdiction by reversing the order of the circuit court. *Id*. at *2. The *Blumberg* court began its analysis as follows:

> If a community spouse seeks an increase in spousal income allowance (MMMNA), the Act sets out two different and independent avenues of procedure that can be followed in setting the increase. The procedures are found in 42 U.S.C. § 1396r-5(d)(5) and 42 U.S.C. § 1396r-5(e). 42 U.S.C. § 1396r-5(e)(2) gives the community spouse a chance to demonstrate a need for more income than the allowance that would have otherwise been calculated under 42 U.S.C. § 1396r-5(d). This is accomplished through an administrative Medicaid fair hearing.

> Additionally, 42 U.S.C. § 1396r-5(d)(5) gives the community spouse a judicial option for court ordered support. The statute provides, in subsection (d)(5), as follows: "If a court has entered an order against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall not be less than the amount of the monthly income so ordered." Thus, the crux of the litigation in the case hinges on whether these two provisions are absolute alternative methods.

---

[7]In a very recent decision in *Crisel v. Crisel*, this court established a bright-line rule requiring parties to notify the Tennessee Department of Human Services when they seek an increase in the MMMNA through the court system. *Crisel v. Crisel*, No. E2010-02042-COA-R3-CV, 2012 WL 565914, at *5 (Tenn. Ct. App. Feb. 22, 2012). We are in complete agreement with *Crisel* concerning the mandatory notice requirement.

[8]The chancery court also held that the husband "misrepresented Medicaid provisions when he claimed that the allocation of [wife's] entire monthly income would not affect her eligibility for benefits. *Blumberg*, 2000 WL 158454, at *1.

*Id.* at *2-3.

The *Blumberg* court then answered the question "whether these two provisions are absolute alternative methods" in the affirmative. *Blumberg*, 2000 WL 1586454, at *3.

> We are of the opinion that the statute itself does not preclude either side from making the choice they prefer. "The court should assume that the legislature used each word in the statute purposely and that the use of these words conveyed some intent and had a meaning and a purpose." *Anderson Fish & Oyster Company v. Olds*, 277 S.W.2d 344, 346 (1955); *Chadwell v. Knox County Tennessee*, 980 S.W.2d 378, 382.

> Although a single standard would be ideal to facilitate this process, absence an action by the legislature stating the contrary we can only interpret their intent. We take the position that the legislature in enacting the Act "used each word purposely and the use of the words conveyed some intent." *Id*. Moreover, had the legislature intended a different interpretation, it could simply have stated in precise language that the administrative process is the only procedure available. However, the legislature did not do this. *Consequently, they provided two absolute alternative methods of setting a spouse's allowance and we are bound to recognize both procedures.* Thus, [the Department] was without the authority to ignore the Circuit Court Order of spousal support.

*Id*. (emphasis added).

We now turn to the issue presented in this appeal, whether "exceptional circumstances resulting in significant financial distress" must be demonstrated if the community spouse pursues relief by court order instead of an administrative hearing before the agency.

## II. STANDARD OF REVIEW

The issue before us involves the interpretation of a statute, the construction of which is a question of law. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000). The standard of review for questions of law is the de novo standard. *Id.*

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Department of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *see also McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Our duty is to seek a reasonable construction "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland*

*Healthcare Center,* Inc., 49 S.W.3d 281, 286 (Tenn. 2001) (quoting *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)). To determine legislative intent, we must look to the plain and ordinary meaning of the language in the statute. *Gleaves*, 15 S.W.3d at 802. We must also examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *See State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991).

We are to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn. Ct. App. 1998). We must also presume the General Assembly selected their words purposefully and that the use of their words conveys some intent and carries meaning and purpose. *Tennessee Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn. 1984); *see also Clark v. Crow*, 37 S.W.3d 919, 922 (Tenn. Ct. App. 2000); *Tenn. Manufactured Housing Ass'n. v. Metropolitan Gov't.*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990).

### III. MRS. MCCOLLOM'S MMMNA AND CSRA

The Department contends that the party seeking an increase in the MMMNA must demonstrate "exceptional circumstances resulting in significant financial distress" regardless of whether the party proceeds under the judicial option or the administrative fair hearing option. In further support of their position, the Department points to Tennessee Code Annotated § 71-5-121 (2002), which states that:

> In all actions for the transfer of income or resources from an institutionalized spouse for the support of the community spouse, the court shall apply the standards utilized to determine medicaid eligibility in this state, regardless of any state laws relating to community property or the division of marital property.

The Department notes that the trial court made the specific finding that there was no evidence of significant financial distress presented in this case. Mrs. McCollom argues that because 42 U.S.C. § 1396r-5(e) does not include the language regarding "exceptional circumstances" that it does not apply when a community spouse seeks an increase in the MMMNA through a court order. In support, Mrs. McCollom cites to a New Jersey action, *M.E.F. v. A.B.F.*, 393 N.J. Super. 543 (N.J. Super. Ct. App. Div. 2007). We do not agree with this assertion and find that whether a party proceeds under the judicial avenue or the

administrative avenue, the community spouse must demonstrate "exceptional circumstances resulting in significant financial distress" in order for the MMMNA to be raised.[9]

As discussed previously, this court held in *Blumberg*, we think correctly, that there were "two absolute alternative *methods* of setting a spouse's allowance." *Id*. We do not read *Blumberg* as holding that two alternative *standards of eligibility* apply, merely two alternative *methods or forums*; however, if *Blumberg* holds that two eligibility standards exist then we respectfully disagree with such a conclusion. As this court recently stated in *Crisel v. Crisel*, 2012 WL 565914, at *2, a community spouse could seek an increase through an administrative Medicaid fair hearing or through the court, and "[i]f a spouse elected to pursue an increase through the court system, then the court was tasked with applying 'the standards utilized to determine [M]edicaid eligibility in this state.'" *Id.* (citing Tenn. Code Ann. § 71–5–121). We find no basis, however, upon which to conclude that there are two different standards of eligibility for obtaining such an increase. We also believe that such an interpretation would be illogical in terms of the overall purpose of the Act.

We also note that the case cited by Mrs. McCollom, *M.E.F. v. A.B.F.*, is distinguishable. In *M.E.F.*, the court looked to the legislative history of the Act to determine what standard of proof applied in a court proceeding and determined that "neither legislative history nor the statute addresses the standard of proof applicable in court proceedings." *M.E.F.*, 393 N.J. Super. at 554. The New Jersey court then looked to its own state regulations for further guidance in addressing whether two standards applied depending on whether a party sought an increase through a judicial route or the administrative route. *Id*. New Jersey regulations provided that in an administrative proceeding, the community spouse must demonstrate "exceptional circumstances resulting in financial duress."[10] *Id*. at 549-550 (citing N.J.A.C. 10:71-5.7(e)). However, New Jersey regulations also provided that if a party proceeded through the "Family Part," meaning the court proceeding, the application would be determined under standards set forth in the statutes governing alimony and maintenance, N.J.S.A. 2A:34-23, which "includes consideration of actual need and the ability of the parties to pay, the duration of the marriage, the standard of living established in the marriage and other enumerated factors." *Id*. at 550. In Tennessee, our legislature enacted Tennessee Code Annotated § 71-5-121, which expressly states that *the standard* for determining a transfer of

---

[9]The Act only provides for a raise in the CSRA when the CSRA, in terms of the amount of income generated by the allowance, is inadequate to raise the community spouse's income to the MMMNA. 42 U.S.C. § 1396r-5(e)(2)(C).

[10]The court noted that the language in the New Jersey regulation was slightly different than that set forth in the federal statute, however, "because of the close parallels between federal law and state regulation, and the absence of any evidence that New Jersey sought to diverge from the MCCA model," the analysis would focus on the federal statute and its history. *Id*. at 547.

income or assets, will be the standards utilized to determine medicaid eligibility, not state statutes regarding community property or marital property. The Department contends that this standard is that set forth at 42 U.S.C. § 1396r-5(e)(2), and we agree.

Thus, in order for Mrs. McCollom to obtain an increase in the MMMNA and a resulting increase in her CSRA, she is required to demonstrate "exceptional circumstances resulting in significant financial distress." In its order, the trial court made the specific finding that there was no evidence of exceptional circumstances in this case.

We, therefore, have no option but to conclude that Mrs. McCollom is not entitled to an increase in the MMMNA and CSRA.

### IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against the appellee, Betty L. McCollom.

_____
FRANK G. CLEMENT, JR., JUDGE