# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 13, 2012 Session

## BERRY'S CHAPEL UTILITY, INC. v. TENNESSEE REGULATORY AUTHORITY

**Appeal from the Tennessee Regulatory Authority**
**No. 1100005      Mary W. Freeman, Chairman**

---

**No. M2011-02116-COA-R12-CV - Filed December 21, 2012**

---

This is a direct appeal by newly incorporated Berry's Chapel Utility, Inc., from a declaratory order by the Tennessee Regulatory Authority. The dispute hinges on whether the TRA had jurisdiction over Berry's Chapel pursuant to Tennessee Code Annotated § 65-4-101(6)(E) (2010). The TRA held that Berry's Chapel was a public utility as defined in Tennessee Code Annotated § 65-4-101(6)(E) (2010), thus, it was subject to the jurisdiction of the TRA. Berry's Chapel asserts it was a non-profit and, thus, it was a non-utility by statutory definition and not subject to the TRA's jurisdiction. We affirm the decision of the TRA.

**Tenn. R. App. P. 12 Direct Review of Administrative Proceedings by the Court of Appeals; Judgment of the Tennessee Regulatory Authority Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Henry M. Walker, Donald Lee Scholes, and Heather Howell Wright, Nashville, Tennessee, for the appellant, Berry's Chapel Utility, Inc.

Jonathan N. Wike, Richard Collier, and Shiva K. Bozarth, Nashville, Tennessee, for the appellee, Tennessee Regulatory Authority.

Robert E. Cooper, Attorney General and Reporter, William E. Young, Solicitor General, and Vance L. Broemel, Senior Counsel, Nashville, Tennessee, for the appellee, the Consumer Advocate and Protection Division of the Office of the Attorney General of Tennessee.

**OPINION**

For many years, Lynwood Utility Inc., a for-profit corporation that operated subject to the jurisdiction of the Tennessee Regulatory Authority, provided sewer services to approximately 800 customers in the Cottonwood residential community near Franklin, Tennessee. On July 16, 2010, some of the shareholders and officers of Lynwood Utility incorporated a new business entity, Berry's Chapel Utility, Inc. and filed a Charter with the Secretary of State of Tennessee. The Charter stated that Berry's Chapel was a non-profit mutual benefit corporation.[1]

On September 1, 2010, Lynwood Utility Inc., merged into Berry's Chapel; only Berry's Chapel survived the merger. Thereafter, Berry's Chapel sent a letter to the TRA informing it of the merger and that Berry's Chapel would be providing sewer services to Lynwood's former customers. The letter to the TRA also stated that Berry's Chapel was not subject to the jurisdiction of the TRA because Berry's Chapel qualified as a non-utility under Tennessee Code Annotated § 65-4-101(6)(E) (2010). At the time, Tennessee Code Annotated § 65-4-101(6)(E) contained an exception to the definition of public utilities for "[a]ny cooperative organization, association or corporation not organized or doing business for profit."[2]

Soon thereafter, and without seeking approval from any entity or agency, Berry's Chapel informed all of its customers that the sewer rates would increase by $20 per month effective November 1, 2010. After learning of the unilateral rate increase by Berry's Chapel, the Consumer Advocate Division of the Tennessee Attorney General's Office filed a Petition for Declaratory Order with the TRA seeking a declaratory order that Berry's Chapel was a public utility because it did not qualify as a "non-utility" under the definition of non-utility

---

[1]The record on appeal indicates that Berry's Chapel has not yet obtained non-profit status from the Internal Revenue Service.

[2]Effective June 6, 2011, the subsection was amended to read:

Any cooperative organization not organized or doing business for profit, cooperative association not organized or doing business for profit, or cooperative corporation not organized or doing business for profit. For purposes of this subdivision (6)(A)(v), "cooperative" shall mean only those nonprofit cooperative entities organized under or otherwise subject to the Rural Electric and Community Services Cooperative Act, compiled in chapter 25, part 2 of this title, or the Telephone Cooperative Act, compiled in chapter 29 of this title;

2011 Tenn. Pub. Acts ch. 430, § 3.

in Tennessee Code Annotated § 65-4-101(6)(E) (2010).[3] Berry's Chapel filed an answer; thereafter, the parties filed briefs in support of their respective positions. Oral arguments were held before a panel on April 4, 2011.

On August 5, 2011, the TRA issued its Order. First, the TRA ruled that "[i]nherent and necessary in the power to adequately regulate public utilities is the long accepted ability of the TRA to interpret the statutory definition of a public utility and that of a non-utility"; therefore, the TRA held it was within its jurisdiction to determine whether Berry's Chapel was a public utility or a non-utility. The TRA then found that Berry's Chapel was a public utility subject to TRA regulation. The TRA reasoned that for Berry's Chapel to qualify as a non-utility it would have to be a not-for-profit "cooperative." Further, the TRA held that Berry's Chapel was not a cooperative because no "member structure" had been established and Berry's Chapel did not have members. Based upon these holdings, the TRA ordered that Berry's Chapel suspend assessing the $20 rate increase. Berry's Chapel then filed a direct appeal to this court.

## ANALYSIS

This is a direct appeal from a declaratory order issued by the Tennessee Regulatory Authority.[4] The dispute hinges on whether Berry's Chapel is subject to the jurisdiction of the TRA. Berry's Chapel asserts that it was a non-utility, as that term was defined in the 2010 version of Tennessee Code Annotated § 65-4-101(6) (2010), because the statute then in effect defined non-utilities to include non-profit corporations and Berry's Chapel was incorporated in July of 2010 as a non-profit corporation.

The operative subsection in effect prior to June 6, 2011, states that a "public utility" shall not include: "Any cooperative organization, association or corporation not organized or doing business for profit." Tenn. Code Ann. § 65-4-101(6)(E) (2010). The parties read this very short sentence to have differing meanings. Berry's Chapel insists section (6)(E) exempts corporations not organized or doing business for profit. The Attorney General and the TRA read it to only exempt *cooperative corporations* not organized or doing business for profit.

---

[3]In the Petition, the Attorney General's Office also sought an order that Berry's Chapel refund to its customers the $20 per month rate increase that was implemented on November 1, 2010. The TRA did not rule on the refund request; instead, it opened a new docket to subsequently determine whether the customers of Berry's Chapel were entitled to a refund of the increased sewer rates paid after November 1, 2010. The refunds are not at issue in this appeal.

[4]Unlike most administrative agency appeals, this case did not go before the Chancery Court; the appeal is directly to this court.

The parties differing assertions are due, in part, on the fact the word *cooperative* only appears before the word *organization* and not before the words *association* and *corporation*. Had the sentence read "[a]ny cooperative organization not organized or doing business for profit, cooperative association not organized or doing business for profit, or cooperative corporation not organized or doing business for profit," there would be no room for construction of the meaning of the statute, but it did not, at least not before June 6, 2011.

A.

The issue before us involves the interpretation of a statute, the construction of which is a question of law. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000). The standard of review for questions of law is de novo. *Id.*

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Department of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *see also McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Our duty is to seek a reasonable construction "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center,* Inc., 49 S.W.3d 281, 286 (Tenn. 2001) (quoting *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)). To determine legislative intent, we must look to the plain and ordinary meaning of the language in the statute. *Gleaves*, 15 S.W.3d at 802. We must also examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *See State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *National Gas Distribs., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991).

B.

Berry's Chapel insists it qualifies as a non-utility under the 2010 statute because it is a non-profit corporation. The Attorney General and the TRA insist this is an erroneous reading of the 2010 statute because the modifying term *cooperative* applies to all three types of business organizations referenced in the sentence: organizations, associations, and corporations. The parties differing assertions are due to the location of the comma and the fact the word *cooperative* only appears immediately before the word *organization* but not immediately before the words *association* and *corporation*. We, however, do not find it necessary to diagram the sentence to ascertain the General Assembly's intent; instead, the meaning of the exclusion can be found by applying the rules of statutory construction, specifically the rule of *in pari materia*, which provides that statutes in "*pari materia*," being

those relating to the same subject or having a common purpose, "are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809-10 (Tenn. 1994). Thus, we shall review the definition of public utilities and the listed exclusions to that definition to ascertain the General Assembly's intent as it pertains to the exclusions in subsection (6)(E) for non-profit corporations.

Tennessee Code Annotated § 65-4-101(6) (2010) defines "public utilities." The statute also specifies a listing of utilities identified as "non-utilities," which shall not be construed as public utilities. *Id*. The relevant sections read as follows:

> "Public utility" means every individual, copartnership, association, corporation, or joint stock company, its lessees, trustees, or receivers, appointed by any court whatsoever, that own, operate, manage or control, within the state, any interurban electric railway, traction company, all other common carriers, express, gas, electric light, heat, power, water, telephone, telegraph, telecommunications services, or any other like system, plant or equipment, affected by and dedicated to the public use, under privileges, franchises, licenses, or agreements, granted by the state or by any political subdivision thereof. "Public utility" as defined in this section shall not be construed to include the following nonutilities:
>
> (A) Any corporation owned by or any agency or instrumentality of the United States;
>
> (B) Any county, municipal corporation or other subdivision of the state of Tennessee;
>
> (C) Any corporation owned by or any agency or instrumentality of the state;
>
> (D) Any corporation or joint stock company more than fifty percent (50%) of the voting stock or shares of which is owned by the United States, the state of Tennessee or by any nonutility referred to in subdivisions (a)(1), (2), and (3);
>
> (E) Any cooperative organization, association or corporation not organized or doing business for profit;
>
> (F) Any individual, partnership, copartnership, association,

corporation or joint stock company offering domestic public cellular radio telephone service authorized by the federal communications commission; provided, that the real and personal property of such domestic public cellular radio telephone entities shall be assessed by the comptroller of the treasury pursuant to §§ 67-5-801(a)(1), 67-5-901(a)(1), and § 67-5-1301(a)(2); provided, however, that until at least two (2) entities, each independent of the other, are authorized by the federal communications commission to offer domestic public cellular radio telephone service in the same cellular geographical area within the state, the customer rates only of a company offering domestic public cellular radio telephone service shall be subject to review by the Tennessee regulatory authority pursuant to §§ 65-5-101 – 65-5-104. Upon existence in a cellular geographical area of the conditions set forth in the preceding sentence, domestic public cellular radio telephone service in such area, for all purposes, shall automatically cease to be treated as a public utility under this title. The Tennessee regulatory authority's authority over domestic public cellular radio telephone service is expressly limited to the above extent and the authority shall have no authority over resellers of domestic public cellular radio telephone service. For the purpose of this subdivision (6)(F), "authorized" means six (6) months after granting of the construction permit by the federal communications commission to the second entity or when the second entity begins offering service in the same cellular geographical area, whichever should first occur. This subdivision (6)(F) does not affect, modify or lessen the regulatory authority's authority over public utilities that are subject to regulation pursuant to chapter 5 of this title;

(G) Any county, municipal corporation or other subdivision of a state bordering Tennessee, but only to the extent that such county, municipal corporation or other subdivision distributes natural gas to retail customers within the municipal boundaries and/or urban growth boundaries of a Tennessee city or town adjoining such bordering state;

(H) Any of the foregoing nonutilities acting jointly or in combination or through a joint agency or instrumentality; and

(I) For purposes of §§ 65-5-101 and 65-5-103, "public utility" shall not include interexchange carriers. "Interexchange carriers" means companies, other than incumbent local exchange telephone companies, owning facilities in the state which consist of network elements and switches, or other communication transmission equipment used to carry voice, data, image, and video traffic across the local access and transport area (LATA) boundaries within Tennessee.

Tenn. Code Ann. § 65-4-101(6)(A)-(I) (2010).

By construing the statutory subsection at issue here *in pari materia* with the other statutory subsections relating to the same subject or having a common purpose, *see Wilson*, 879 S.W.2d at 809-10, it becomes readily apparent that the General Assembly excluded entities from the definition of public utility that have one thing in common, independent oversight of the business entity. For example, subsection (A) of Tennessee Code Annotated § 65-4-101(6) excludes corporations "owned by or any agency or instrumentality of the United States;" subsection (B) excludes "county, municipal corporation or other subdivision of the state of Tennessee;" subsection (C) excludes corporations "owned by or any agency or instrumentality of the state;" and subsection (D) excludes any corporation or joint stock company of which more than 50% of the voting shares are owned by the United States, the state of Tennessee, or by any nonutility referred to in subdivisions (a)(1), (2), and (3). Thus, all of the foregoing examples have independent oversight, being oversight that is either by a county, state, or federal government agency.

The foregoing notwithstanding, Berry's Chapel would have us construe the next subsection, (6)(E), to subject the captive customers of the non-profit corporate utility to the unbridled authority of the directors and officers of the corporation. The primary basis for this assertion is the fact that the General Assembly did not include the word *cooperative* immediately before *corporation*, only before organization. We find no merit to this argument.

The courts are to "give effect to every word, phrase, clause and sentence" of a statute to carry out the legislative intent. *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn. Ct. App. 1998). Reading subsection (6)(E) in *pari materia* with the rest of the entire section, it is readily apparent that a not-for-profit corporation would have to be a cooperative to comport with the oversight afforded under subsections (A)-(D) of Tennessee Code Annotated § 65-4-101(6). This is due to the fact a

cooperative is a legal entity owned and democratically controlled by its members.[5] For example, the purpose of telephone cooperatives, which are also "non-utilities," are identified in the statute as follows:

> Cooperative, nonprofit, membership corporations may be organized under this chapter for the purpose of furnishing telephone service in rural areas to the widest practical number of users of such service; provided, that there shall be no duplication of service where reasonably adequate telephone service is available. Corporations organized under this chapter and corporations which become subject to this chapter in the manner provided in this chapter are referred to in this chapter as "cooperatives," and shall be deemed to be not-for-profit corporations.

Tenn. Code Ann. § 65-29-102. Under the statutory scheme governing telephone cooperatives, we see that "members" of a cooperative are restricted to its customers and the members perform essential acts. For example:

> (a) No person who is not an incorporator shall become a member of a cooperative unless such person shall agree to use telephone service furnished by the cooperative when such telephone service shall be available through its facilities. The bylaws of a cooperative may provide that any person, including an incorporator, shall cease to be a member thereof if such person shall fail or refuse to use telephone service made available by the cooperative within a specified time after having become a member. Membership in the cooperative shall not be transferable, except as may be provided in the bylaws. The bylaws may prescribe additional qualifications and limitations in respect of membership.

Tenn. Code Ann. § 65-29-109(a).

The telephone cooperative statutory scheme further provides:

Each member shall be entitled to one (1) vote on each matter submitted to a vote at a meeting. Voting shall be in person, but, if the bylaws so provide, may

---

[5] "A cooperative is a business or organization owned by and operated for the benefit of those using its services. . . . Typically, an elected board of directors and officers run the cooperative while regular members have voting power to control the direction of the cooperative." U. S. Small Business Administration, http://www.sba.gov/content/cooperative (last visited Dec. 20, 2012).

also be by proxy or by mail, or both. If the bylaws provide for voting by proxy or by mail, they shall also prescribe the conditions under which proxy or mail voting shall be exercised. No person shall vote as proxy for more than one (1) member at any meeting of the members, and/or election.

Tenn. Code Ann. § 65-29-109(g).

Further, pursuant to the statutory scheme for telephone cooperatives, the business and affairs of the cooperatives are managed by a board of directors who are elected by the members and each director shall be a member of the cooperative. *See* Tenn. Code Ann. § 65-29-111(a).

For the foregoing reasons, we have determined that it was the clear intent of the General Assembly for the 2010 exclusion in Tennessee Code Annotated § 65-4-101(6)(E) to pertain to *cooperative* corporations that are non-profits, not to a non-profit corporation that is not a cooperative. This reading of Tenn. Code Ann. § 65-4-101(6)(E) makes it consistent with the nature of the other exclusions in subsection (6), which involve organizations already having oversight.

We have determined that Berry's Chapel did not fall within the exceptions found in Tenn. Code Ann.§ 65-4-101(6)(E), that it was subject to the jurisdiction of the TRA and, therefore, we affirm the 2011 Declaratory Order issued by the TRA.[6]

### IN CONCLUSION

The judgment of the Tennessee Regulatory Authority is affirmed, and this matter is remanded with costs of appeal assessed against the appellant.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[6]Berry's Chapel raised two other issues; one of which challenged the TRA's authority to make the determination that Berry's Chapel was subject to its jurisdiction. Our ruling is dispositive of that issue and the other issue; thus, it is not necessary that we address either issue.